IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID J. KIEWEL, ET. AL.,

    Plaintiffs,

vs.                          Case No. 10-2113-JTM

IVAN BALABANOV, ET. AL.,

    Defendants.

MEMORANDUM AND ORDER

The clerk granted plaintiffs' Application for Clerk's Entry of Default (Dkt. No. 10) on July 12, 2010. Plaintiffs filed a Motion for Default Judgment (Dkt. No. 12) on October 7. Defendants filed a Motion to Set Aside Default Judgment (Dkt. No. 16). For the following reasons, the court grants defendants' motion and denies plaintiffs' motion.

**I. Factual Background**

Plaintiffs, David J. Kiewel and K9 Working Dogs International, L.L.C., filed this action against defendants, Ivan Balabanov and The Doghouse, L.L.C., on February 26, 2010. Plaintiffs claim defendants defamed them and invaded their privacy by placing them in a false light. Plaintiffs also claim tortious interference with prospective business relationship and false advertising. The specific facts, taken from the motion and response, are particularly important to the motion and are set out below.

Ivan Balabanov is a professional trainer, handler, broker, breeder, instructor, and consultant of working dogs and the founder, member, and co-manager of The Doghouse, L.L.C., organized under Florida law. He has authored many books and articles on the subject and has a DVD series based on his training methods. He also frequently gives seminars nationally and internationally about his methods. In 2004, Balabanov moved from Florida to Paducah, Kentucky to operate a dog training and boarding facility. In the late spring, he organized a seminar about bite work and to practice techniques used by individuals training such dogs. On the first or second day, David J. Kiewel arrived even though he had not registered for the seminar. Kiewel operates K9 Working Dogs International, L.L.C., (K9 Working Dogs) organized under Kansas law. K9 Working Dogs trains and sells personal protection dogs and law enforcement dogs. Balabanov and Kiewel had several discussions about dog training and Kiewel stayed with Balabanov in Kentucky for a period of time in exchange for helping out with the dogs. The two have had no contact since Kiewel left Balabanov's home.

From 2001, to approximately December 2008, Balabanov leased an internet website hosted at "www.malinois.com/otvitosha" (original website). The original website provided information about his Belgium Malinois breeding program and the training programs he offered. It also contained a list of his accomplishments as a trainer and the awards won by dogs trained under his program. Around mid 2005, Balabanov created a separate webpage (Kiewel webpage) accessible by hyperlink from the original website. On the Kiewel webpage, he posted information about how Kiewel and his brother Josh, and their business entity at the time, Kiewel Working Dogs (KWD) Protection Dogs had purchased the internet domain name associated with his trademark name, "Ot Vitosha." Plaintiffs created websites using this domain name which, when accessed by the public, redirected

visitors to the website for KWD Protection Dogs. Balabanov created the Kiewel webpage to inform the public that he was not associated with Kiewel or KWD Protection Dogs and to state that Kiewel was not a certified dog trainer under Balabanov's training system. Around the same time, Balabanov spoke to Josh Kiewel several times trying to persuade him to cease using his trademarks, but the two did not reach agreement. Eventually, plaintiffs ceased such use; however, they continued to direct visitors to other websites not associated with Balabanov's, including a pornographic website. Balabanov described these deeds on the Kiewel webpage.

In October of 2005, Balabanov began receiving emails from people who had found the Kiewel webpage while trying to research KWD Protection Dogs. These people asked Balabanov to notify the public of their negative experiences with plaintiffs. Balabanov, at the suggestion and with the permission of these individuals, posted three emails on the Kiewel webpage. After posting the last email around September 2007, he received a video clip of a TV newscast from Pennsylvania reporting that the Warminster, Bucks County, police department was suing Kiewel and KWD Protection Dogs for selling dogs with serious health issues. Balabanov posted the video clip and an associated newspaper article on the Kiewel webpage. All quotes provided on the webpage came directly from the article and the article was posted in its entirety. Around December 2008, Balabanov purchased a new IP address, "www.malinoispuppies.com" (New Website). He transferred all the information from the Kiewel webpage to the New Website.

Plaintiffs filed the current action on February 26, 2010, and defendants were served on March 18. On April 8, the date defendants' answer was due, a Utah attorney contacted plaintiffs on defendants' behalf requesting an extension of one week. Plaintiffs agreed, but defendants never filed a motion requesting the extension. On April 15, defendants again requested "a few more days" to

3

file an answer and made a counter demand regarding domain names not owned by plaintiffs. Plaintiffs agreed to extend the deadline to April 19, but once again defendants did not file a motion and did not file an answer. On April 19, plaintiffs sent a letter to defendants responding to defendants' demands and outlining the current issues in the case. Defendants did not respond.

Plaintiffs filed their first Motion for Default Judgment on May 25 (Dkt. No. 7). Defendants' Utah attorney called plaintiffs' attorney on May 19, inquiring about the status of the suit and plaintiffs' attorney informed him default was pending. Plaintiffs never heard from the Utah attorney again. On May 27, this court denied plaintiffs' Motion for Default Judgment because plaintiffs had not applied for entry of default. Plaintiffs then filed and were granted an entry of default on July 12, 2010.

On September 21, James Honda, a New Jersey attorney, contacted plaintiffs on defendants' behalf. Honda submitted a settlement offer on November 11, which plaintiffs rejected. Honda took no further action in the case. On December 13, defendants' present attorneys entered their appearances in this case and filed the present Motion to Set Aside Default Judgment on December 15.

## II. Legal Standard: Setting Aside Entry of Default

Under Fed. R. Civ. P. 55(c), a court may set aside an entry of default for good cause, and may set aside a default judgment under Rule 60. *Id.* Although defendants seek to "set aside default judgment," a default judgment has not been entered in this case. Defendants' motion is more accurately termed a "motion to set aside entry of default;" thus, they only need to show good cause. "'The Court applies the same considerations when deciding whether to set aside either an entry of

default or a default judgment, but they are applied more liberally when reviewing an entry of default.'" *Olivas v. Bentwood Place Apartments, L.L.C.*, 09-4035, 2010 WL 2952393, at *2 (D. Kan. July 26, 2010) (quoting *Clelland v. Glines*, No. 02-2223, 2003 WL 21105084, at *3 (D. Kan. Apr. 11, 2003)). The good cause standard of Rule 55(c) is a lesser standard than the excusable neglect standard of Rule 60(b). *Id.* Generally, the court considers three factors when determining good cause under Rule 55(c): "(1) whether the default was the result of culpable conduct of the defendant, (2) whether plaintiff would be prejudiced if the default should be set aside, and (3) whether the defendant presented a meritorious defense." *Hunt v. Ford Motor Co.*, 1995 WL 523646, at *3 (10th Cir. 1995). These factors are not exclusive, and the court may consider other factors. *Olivas*, 2010 WL 2952393, at *2. The standard for setting aside an entry of default is liberal because "[t]he preferred disposition of any case is upon its merits and not by default judgment." *Crutcher v. Coleman*, 205 F.R.D. 581, 584 (D. Kan. 2001) (quoting *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970)). The court must "balance the interests of the defendants in the adjudication of the case on the merits, against the interest of the public and the court in the orderly and timely administration of justice." *McCook v. Flex Fin. Holding Co.*, No. 08-2039, 2008 WL 1924129, at *2 (D. Kan. Apr. 29, 2008) (citing *Hunt v. Kling Motor Co.*, 841 F. Supp. 1098, 1106 (D. Kan. 1993)). The Tenth Circuit has stated:

> "[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection . . . . a workable system of justice requires that litigants not be free to appear at their pleasure."

*In re Rains*, 946 F.2d 731, 732-33 (10th Cir. 1991) (quoting *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983)).

*A. Defendants' Culpability*

Under the first factor, a defendant's conduct is culpable if it was willful or without excuse. *Hunt*, 1995 WL 523646, at *3; *United States v. Timbers Preserve*, 999 F.2d 452, 454 (10th Cir. 1993). A defendant's knowledge of a lawsuit and his post-service actions are important in measuring the willfulness of a defendant's default. *Olivas*, 2010 WL 2952393, at *2. "When a party has actual or constructive notice of a lawsuit, yet completely fails to answer or otherwise communicate with the Court, defendant's failure is willful and 'demonstrates complete disregard for the authority of the Court.'" *Id.* (quoting *Crutcher*, 205 F.R.D. at 584). If defendant's actions were culpable, "[t]he district court may refuse to set aside default on that basis alone." *Crutcher*, 205 F.R.D. at 584.

Defendants contend their failure to answer in time does not constitute a willful default because Balabanov has no experience in civil litigation and he simply relied on the advice of several attorneys who never entered their appearances on his behalf. However, such an excuse has been foreclosed by the Supreme Court in *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962) ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of his freely selected agent."). There may be situations in which an attorney's misconduct may not fairly be attributable to the client as to constitute a willful default, but this is not such a case. *See Mozee v. Kuplen*, No. 87-2359, 1989 WL 21164, at *1-2 (D. Kan. Feb. 1, 1989) (finding

6

excusable neglect when client answered plaintiff's interrogatories but attorney failed to return them and client hired new attorney six days after default was entered). In this case, it is unclear whether default was purely the fault of Balabanov or his various attorneys. However, it is clear that Balabanov received actual notice of the suit through personal service at his residence in Florida. In April 2010, defendants actively sought an extension of time to file an answer, but never did so. Further, defendants became aware plaintiffs were seeking default judgment on May 26, when defendants' Utah attorney contacted plaintiffs and was informed of the pending default judgment motion. Two months after default, on September 21, defendants' new attorney, James Honda, contacted plaintiffs and attempted to settle the suit by submitting a settlement offer on November 11. Defendants took no further action until their current attorneys entered their appearances and filed the present motion in mid December. Such a time line shows defendants were not without blame for the several month delay. After receiving notice of the suit and of entry of default, defendants did not act promptly to secure new counsel or to file a responsive pleading, rather defendants continued to dither until the current attorneys took action. The long delays, especially after default, distinguish this case from *Mozee*, in which purely attorney error excused the defendants' otherwise culpable conduct. In these circumstances, defendants' culpable conduct caused the default.

A court may refuse to set aside default after a finding of culpable conduct. *See Crutcher*, 205 F.R.D. at 584. However, because of the preference for adjudication on the merits, the court finds it necessary to analyze the other two factors. *See id.*

*B. Prejudice to Plaintiffs*

The second factor is whether the plaintiffs would be prejudiced if default were set aside. Prejudice to plaintiff means "acts done by the moving party or events that have occurred which have in some way impaired or thwarted the non-moving party's ability to litigate or defend the case." *McCook*, 2008 WL 1924129, at *2 (quoting *Superfilm of Am., Inc. v. UCB Films, Inc.*, No. 02-4146, 2004 WL 2413497, at *2 (D. Kan. Sept. 23, 2004)). Plaintiffs argue they have been prejudiced solely because of defendants' delay in responding. While delay alone can be a basis for inferring prejudice, the real thrust of this factor is that default will impede the plaintiffs' ability to litigate the case. *Compare Olivas*, 2010 WL 2952393, at *3; *Porter v. Brancato*, 171 F.R.D. 303, 304 (D. Kan. 1997), *with McCook*, 2008 WL 1924129, at *2. Plaintiffs have not alleged that the delay has hampered their ability to litigate this case other than a bare assertion that the length of time has caused them prejudice. Absent more concrete allegations of prejudice, plaintiffs have the same ability to litigate now as they did 8 months ago when default was entered. Thus, the court finds the plaintiffs will not be prejudiced in a significant way if the default is set aside.

*C. Meritorious Defenses*

The third factor is whether the defendants have presented a meritorious defense. "The burden to show a meritorious defense is light." *Superfilm*, 2004 WL 2413497, at *2. The Tenth Circuit has provided the following guidance:

> The parties do not litigate the truth of the claimed defense in the motion hearing. Rather, the court examines the allegations contained in the moving papers to determine whether the movant's version of the factual circumstances surrounding the dispute, if true, would constitute a defense to the action. For purposes of this part of the motion, the movant's version of the facts and circumstances supporting his

defense will be deemed to be true. Unlike the simple notice pleading required in
original actions, the rule relating to relief from default judgments contemplates more
than mere legal conclusions, general denials, or simple assertions that the movant has
a meritorious defense. The rule requires a sufficient elaboration of the facts to permit
the trial court to judge whether the defense, if movant's version is believed, would
be meritorious.

*Crutcher*, 205 F.R.D. at 585 (quoting *In re Stone*, 588 F.2d 1316, 1319-20 (10th Cir. 1978)).

Defendants articulate several defenses to the claims against them. First, regarding the defamation and the invasion of privacy, false light claims, defendants assert truth and privilege as defenses.[1] Truth is a complete defense while privilege may be absolute or qualified. *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 226, 4 P.3d 1149, 1169 (2000); *Turner v. Halliburton Co.*, 240 Kan. 1, 7, 722 P.2d 1106 (1986). A qualified, or limited, privilege is generally restricted to situations in which public policy favors the free exchange of information over the individual's interest in the subject matter of the communication. *Id.* 7-8. The alleged false statements made by defendants are contained in paragraph 8 of the Complaint, and consist of the following:

> a. That David Kiewel does not exist as a person;
> b. That K9 Working Dogs International, LLC does not have any assets;
> c. That K9 Working Dogs International, LLC use fake names;
> d. That employees of K9 Working Dogs International, LLC "purchased domain names associated strictly with [Ivan Balabanov's] trademark names,"
> e. That David Kiewel and K9 Working Dogs International, LLC used the domain names to direct traffic to inappropriate web-sites;
> f. That David Kiewel and K9 Working Dogs International, LLC used Balabanov's trademark names to gain business; and
> g. That David Kiewel and K9 Working Dogs International, LLC are dishonest and frequently changes names and addresses to cover-up such dishonesty.

(Dkt. No. 1, para. 8). Defendants' defense of truth, if valid, would constitute a meritorious defense. Similarly, defendants' qualified privilege defense is also meritorious because the above statements,

---

[1] *Booth v. Electronic Data Sys. Corp.*, 799 F. Supp. 1086, 1091 (D. Kan. 1992) ("Courts treat false light invasion of privacy claims in essentially the same way that they treat defamation claims.").

9

if true, are the types of statements in which public policy favors their exchange rather than the individual's interest in silencing them.

Next, defendants contend they have a meritorious defense to Count III—tortious interference with prospective business advantage or relationship—because plaintiffs cannot establish the elements necessary to sustain the cause of action. Under Kansas law, to recover on such a claim the plaintiff must prove:

> "(1) [T]he existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized expectancy; (4) intentional misconduct by the defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct."

*Burcham v. Unison Bancorp., Inc.*, 276 Kan. 393, 424, 77 P.3d 130, 151 (2003) (quoting *Turner*, 240 Kan. at 12, 722 P.2d at 1115). First, defendants argue the claim fails because they did not act maliciously when posting the various items on the websites and that this tort requires a showing of malice. Defendants are correct that this tort is predicated on malicious conduct and that if it does not exist the plaintiff cannot recover. *Turner*, 240 Kan. at 12, 722 P.2d at 1115. Defendants also argue they were justified in posting factual information on their webpage. "A person may be privileged or justified to interfere with contractual relations in certain situations." *Id.* However, Kansas has not specifically adopted the "business competitor" privilege stated in Restatement (Second) Torts § 768. But, the Tenth Circuit and the District of Kansas have cited the section with approval. *See DP-Tek, Inc., v. AT&T Global Info. Solutions Co.*, 100 F.3d 828, 833 (10th Cir. 1996); *Parsells v. Manhattan Radiology Group, L.L.P.*, 255 F. Supp.2d 1217, 1238 (D. Kan. 2003). This privilege provides:

> One who intentionally cause a third person not to enter into a prospective contractual relationship with another who is his competitor . . . does not interfere with the other's

relation if (a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest in competing with the other.

RESTATEMENT (SECOND) OF TORTS § 768 (1979). Defendants assert all four elements are met. The matter involved one of competition between plaintiffs and defendants, defendants did not employ wrongful means (assuming the statements posted were true), the action did not constitute an illegal restraint of trade, and defendants' purpose was at least in part done to advance their competitive edge with plaintiffs. This defense is meritorious, based on defendants' allegations that they met all the factors in § 768.

Finally, defendants assert a meritorious defense to the false advertising claim asserted in Count IV. To show false advertising in violation of, a plaintiff must prove: (1) the defendant made a false misrepresentation of fact; (2) in commerce; (3) that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (4) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1) (2006).[2] Defendants argue plaintiffs cannot prove

---

[2]Title 29 U.S.C. section 1125(a)(1) provides in its entirety:
(a) Civil action
    (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
        (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
        (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or

this claim because everything posted on the websites was true. Assuming as we must, the validity of that assertion, defendants have established a meritorious defense to this claim.

*D. Good Cause*

Defendants have established good cause to set aside the clerk's entry of default. The plaintiffs cannot show they will suffer any prejudice if the court sets aside default, and defendants have presented multiple meritorious defenses to plaintiffs' claims. Based on the essential principle that any doubts should be resolved in favor of setting aside default, the court elects to do so. *See Gomes*, 420 F.2d at 1366. However, the court in no way condones defendants' failure to answer or otherwise respond until five months after default was entered. Defendants are not free to appear at their pleasure. *See Cessna Fin. Corp.*, 715 F.2d at 1444. Nevertheless, the court grants defendants' Motion to Set Aside Default Judgment (Dkt. No. 16).

IT IS ACCORDINGLY ORDERED THIS 9th day of May 2011, that defendants' Motion to Set Aside Default Judgment (Dkt. No. 16) is granted.

IT IS FURTHER ORDERED that plaintiffs' Motion for Default Judgment (Dkt. No. 12) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

---

commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*Id.*